# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

CHRISTINA FRANCO,

     Plaintiff,

v.                                       Civ. No. 17-821 GJF

NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*,

     Defendant.

## ORDER

THIS MATTER is before the Court upon Plaintiff Christina Franco's ("Plaintiff's") "Motion to Reverse and Remand to Agency for Rehearing with Supporting Memorandum" ("Motion"). ECF No. 20. The Motion is fully briefed. *See* ECF Nos. 22 (Commissioner's Response), 23 (Plaintiff's Reply). Having meticulously reviewed the entire record and the parties' briefing, the Court concludes that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the reasons articulated below, the Court will **DENY** the Motion.

## I.  FACTUAL BACKGROUND

Plaintiff was born January 17, 1984. Administrative Record ("AR") 81. She completed formal education through the seventh grade. AR 272. She has worked as a caregiver and a cashier. AR 35-37, 58-60, 262. She testified in November 2016 that she lived alone with her four children, then ages 8 to 17. AR 38.[1] In February 2016, Plaintiff applied for Supplemental Security Income with the Social Security Administration ("SSA"), claiming she suffered from a disability beginning

---

[1] *But cf.* AR 570 (a psychologist noting in April 2016 that Plaintiff lives with her husband and four children); AR 579 (a podiatrist discussing his visit with Plaintiff and her husband in April 2016); AR 45-46, 638 (a provider noting in October 2016 that Plaintiff's husband helped her when she rolled her right foot at her home); *see also* AR 61-62 (Plaintiff testifying her husband was deported to Mexico in 2007, that he neither lives with nor visits her, that he was not at a podiatrist appointment in April 2016, and that she only travels to visit him).

on January 1, 2014.   AR 204.[2]  Plaintiff claimed that her disability resulted from the following impairments: hypothyroidism, major depression disorder, fibromyalgia, anxiety, rheumatoid arthritis, back pain, leg cramps, and muscle spasms.  AR 96, 271.

In April 2016, the SSA denied Plaintiff's claim, concluding Plaintiff had the physical capacity to perform "[m]edium forms of work" and the mental capacity to perform "at least unskilled types of work." AR 103, 113.  In July 2016, upon Plaintiff's request for reconsideration, the SSA again denied her claims, once more concluding that Plaintiff had the physical capacity to perform "[m]edium" levels of work and the mental capacity to perform "[s]imple" types of work. AR 123, 133.

Plaintiff then requested a hearing, which was held before ALJ Lillian Richter in Albuquerque, New Mexico, in November 2016.  AR 33, 151.[3]  Assisted by counsel, Plaintiff testified at the hearing, as did Mary Weber, an impartial vocational expert.  AR 33, 35, 72.  In March 2017, "after careful consideration of all of the evidence," the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act.  AR 17.[4]

Plaintiff then sought relief with the SSA's Appeals Council.  AR 202-03.  In June 2017, the Appeals Council found, among other things, no abuse of discretion by the ALJ, no error of law, and no lack of substantial evidence.  AR 1.  It therefore denied Plaintiff's request to review

---

[2] Plaintiff also filed two prior claims for disability, both of which were denied.  AR 81-94.  Specifically, she filed a claim in November 2012 (based on four conditions: hypothyroidism, respiratory problems, back pain, and depression) and a claim in July 2014 (based on the same four conditions, plus fibromyalgia, a low immune system, sleeping problems, migraines, and anxiety).  AR 81, 87-88.  In addition, in August 2017 Plaintiff filed a *subsequent* claim for disability, which was also denied and which was pending a requested "reconsideration" at the SSA at the time Plaintiff filed her motion in this case (February 2018).  Pl.'s Mot. 3, ECF No. 20.

[3] Six additional impairments that were not listed on Plaintiff's original disability claim from February 2016 were brought to the ALJ's attention: obstructive sleep apnea, obesity, bilateral hand pain, osteoarthritis, plantar fasciitis of the left foot, and a fracture of the right foot.  AR 96, 271, 336-37.

[4] A more in-depth discussion of the ALJ's decision appears in Section IV, *infra*.

the ALJ's decision and affirmed that decision as the Commissioner's final decision. *Id.* Plaintiff timely petitioned this Court for relief in August 2017, alleging the Commissioner's final decision was "erroneous as a matter of law and regulation." Pl.'s Compl. 1-2, ECF No. 1.

## II.  PLAINTIFF'S CLAIMS

Plaintiff claims that the ALJ erred by failing to "properly evaluate" three items. Pl.'s Mot. 5, ECF No. 20. First, Plaintiff asserts that, although the ALJ found fibromyalgia to be a "severe impairment," the ALJ nevertheless failed to properly evaluate its severity. *Id.* Second, Plaintiff asserts that the ALJ did not properly evaluate medical opinion evidence. Pl.'s Mot. 5-11. Specifically, she argues that the ALJ gave too much weight to a physician's opinion that Plaintiff had no physical limitations and that the ALJ's resulting finding is not supported by substantial evidence. Pl.'s Mot. 6-10. She also argues that the ALJ did not adopt a portion of a psychologist's opinion—namely that Plaintiff's mental impairments "might impact her ability to be a dependable employee"—and failed to explain why. Pl.'s Mot. 10-11; AR 571. Third, Plaintiff asserts that the ALJ did not properly evaluate her own testimony about her symptoms. Pl.'s Mot. 11-12.

## III.  APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[5] The Court's review of that final agency decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human*

---

[5] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 416.1481; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

*Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)). It does not require a preponderance of evidence. *See Lax*, 489 F.3d at 1084 (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). An ALJ's decision, however, "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

A court should meticulously review the entire record but should neither "reweigh the evidence nor substitute [its] judgment for that of the agency." *Langley*, 373 F.3d at 1118 (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *Hamlin*, 365 F.3d at 1214. A court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760.

**B. Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

The SSA has devised a five-step sequential evaluation process to determine disability.  *See* 20 C.F.R. § 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).  The claimant bears the burden of proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988).  In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity;" (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[6] or (4) that "the impairment or combination of impairments prevents him from performing his past work."  *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant retains sufficient "residual functional capacity" ("RFC") "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

---

[6] If the claimant can show that he has a listed impairment, he will be found to be disabled and no further steps will be analyzed.  20 C.F.R. § 416.920(a)(4)(i-iv).  Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id.*

## IV.  ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In her March 2017 written decision, the ALJ affirmed that she carefully considered "all the evidence," "the complete medical history," and "the entire record" before her.  AR 12, 14, 17.  In her "Findings of Fact and Conclusions of Law," the ALJ discussed the evidence and opinions that led to her decision.  AR 14-25.

### A.  Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since February 2, 2016, the date she applied for disability.  AR 14.[7]  At step two, the ALJ found that Plaintiff had the following severe impairments: "obstructive sleep apnea; obesity; plantar fasciitis of the left foot; arthralgias, including back pain and generalized joint pain; bilateral carpal tunnel syndrome; fibromyalgia; and depressive disorder."  *Id.*  The ALJ also found that Plaintiff's visual impairment,[8] hypothyroidism, and "right fifth metatarsal avulsion fracture" were not severe in nature and explained these findings with appropriate references to the record.  AR 14-15.

At step three, the ALJ found no impairment or combination thereof satisfied the criteria of a listed impairment, and she discussed the relevant evidence in explaining this finding.  AR 15-17.

---

[7] As explained in note 2, *supra*, Plaintiff submitted three other applications for disability on the following dates: November 2012 (denied), July 2014 (denied), and August 2017 (initially denied and pending a requested reconsideration as of February 2018).

[8] In the headline for step two, which listed the severe impairments, the ALJ inadvertently included Plaintiff's visual impairment.  AR 14.  However, it is clear that she considered this impairment to be non-severe.  In the opening paragraph immediately following this headline, for example, she omits this particular impairment (and only this impairment) when again stating the severe impairments.  *Id.*  Immediately afterwards, she also states "[Plaintiff] has a visual impairment . . . which [is] non-severe."  *Id.*; *see also* AR 15 (ALJ discussing non-severe impairments and finding "no evidence that this [visual] impairment impacts [Plaintiff's] ability to perform work related activities. [Plaintiff] drives, watches television, reads and plays board games.").

### B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 416.1920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity.").[9] Here, the ALJ found that Plaintiff had the RFC to perform "light work" as defined in the regulations. AR 17; *see also* 20 C.F.R. § 416.967(a)-(e) (defining the physical exertion requirements of various levels of work). Specifically, regarding Plaintiff's physical capacities, the ALJ found the following RFC:

> [Plaintiff] can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, and can stand/walk for 6 hours and sit for 6 hours in an 8-hour day. Additionally, she can frequent [sic] reach, handle and finger bilaterally.

*Id*. Regarding Plaintiff's mental capacities, the ALJ found the following RFC:

> [S]he is limited to simple, routine and repetitive work; limited to making simple work related decisions in a workplace with few changes in the routine work setting; limited to occasional interaction with supervisors, coworkers and the general public. The claimant cannot perform work in tandem with other employees; is limited to performing work at reasoning level one or two. . . .

*Id*. In making these findings, the ALJ affirmed that she considered "all the symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and further affirmed that she considered the opinion evidence. *Id*.

The ALJ found that Plaintiff's "medically determinable impairments" could reasonably have caused the alleged symptoms. AR 20. She explained, however, that Plaintiff's "statements concerning the *intensity, persistence and limiting effects* of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id*. (emphasis added). As

---

[9] *But cf. Winfrey v. Chater*, 92 F.3d 1017, 1023 (describing the RFC determination as technically the first part of step four).

described below, the ALJ discussed in her RFC assessment the evidence supporting her findings. AR 23-26; *see also* SSR, 96-8p, 61 Fed. Reg. 34475-78 (Jul. 2, 1996) (describing what an RFC assessment must include).

### 1. *Plaintiff's Physical RFC*

In her RFC assessment, the ALJ reviewed Plaintiff's testimony about her pain. AR 18, 36-71. Plaintiff testified that she could not work because of her physical pain (including "body pain," "back pain," shoulder pain, underarm pain, stiff and achy hands, "overall joint pain," "leg cramps," leg numbness, and foot pain) and her psychological symptoms (depression and anxiety). AR 18, 38, 43, 58. Plaintiff testified that she was physically limited to standing for 5-10 minutes, walking for 5-10 minutes, and sitting for 10-15 minutes. AR 18, 48-49. She also testified that she had difficulty with many daily physical activities, such as tying her shoes, dressing herself, using buttons or zippers, combing her daughter's hair, doing household chores, and preparing meals. AR 18, 43-44, 47, 51.

The ALJ reviewed the medical and other evidence in the record, which she found did not support Plaintiff's description of her physical limitations. AR 20, 23. The ALJ's review included Plaintiff's diagnosis of fibromyalgia in 2014 after an "unremarkable" physical examination. AR 18, 423-24. The ALJ also reviewed medical records of additional doctor visits in 2014 and 2015, including her diagnosis of a urinary tract infection, a visual impairment, arthralgia, and back pain. AR 18, 438. In reviewing the medical records from 2016, the ALJ discussed, among other things, a rheumatologist's findings that Plaintiff had a full range of motion and "positive tender points," along with the recommendation that she take anti-inflammatory medications and improve her exercise, diet, and sleeping habits. AR 19, 455, 605-06. The ALJ also reviewed an orthopedist's 2016 diagnosis of bilateral carpal tunnel syndrome and recommendation that Plaintiff treat it by

wearing wrist splints at night. AR 19, 489-91. Finally, the ALJ observed that podiatrist Tommy G. Roe, M.D., diagnosed Plaintiff in April 2016 with plantar fasciitis in her left foot, administered a cortisone injection for pain relief, and instructed her to avoid barefoot walking and to wear supportive shoes. AR 19, 515-16. In June 2016, Plaintiff acknowledged that her foot began to feel better, and doctors noticed improvement (e.g., no significant limp or difficulty weight bearing on either foot) and continued to conservatively treat the condition. AR 19, 577-78.

The ALJ emphasized Plaintiff's statement to Dr. Roe about her physical activity: "She states that she has 4 kids and is very active around her house taking care of the house and her children." AR 19-22, 515; *see also* AR 70 (psychologist referencing Plaintiff's statement that "she can clean, cook, and do grocery shopping. . . . [and] engage in self-care, and does so regularly"). The ALJ also mentioned two reports from Plaintiff's mother, which stated that Plaintiff cared for children, prepared meals, and performed household chores, including light cleaning and laundry. AR 22, 235-37, 295-97. The ALJ also referenced a similar report by Plaintiff that she played board games with her children, prepared them for school, put them to bed, drove an automobile, took public transportation, went to church, shopped about twice a week for groceries and other necessities, and could walk one to two blocks before needing to rest. AR 15-16, 285-91.

The ALJ also reviewed the opinions of five doctors. AR 19-22. After reviewing the file, one state agency physician opined that Plaintiff had no severe physical impairments, and two state agency physicians opined that Plaintiff had the capacity for medium work. AR 20. The ALJ, however, chose to assign their opinions "little weight" and even further limited Plaintiff's RFC. *Id.* Specifically, the ALJ found that "the medical evidence as a whole," including Plaintiff's fibromyalgia (along with evidence of "positive tender points" and Plaintiff's complaints of chronic body pain) and bilateral carpal tunnel syndrome, limited her to an RFC of "light work." *Id.*

Jeffrey Glassheim, D.O., performed a consultative examination of Plaintiff's fibromyalgia and back pain and opined that Plaintiff essentially had no physical limitations. AR 19-20. Dr. Glassheim found Plaintiff could, for example, "sit, stand, and walk normally in an eight-hour workday; had no significant limitations with lifting and/or carrying weight" or with "bending, stooping, crouching, or squatting." AR 20, 373-78. The ALJ gave Dr. Glassheim's opinion "some weight" because it was consistent with his examination findings, and with Plaintiff's and her mother's statements, "which indicate[d] that she [was] physically quite active." AR 21, 235-37, 295-97, 515.

Lastly, eight days before Plaintiff's hearing with the ALJ, Plaintiff's treating physician, Roland Sanchez, M.D., issued the following one-sentence, hand-written opinion on a single piece of paper with his letterhead: "[Plaintiff] has been disabled since 2014, condition has not changed and will be unable to work for the next 12 months (disabling condition: hypothyroidism, depression/anxiety, fibromyalgia, back pain, osteoarthritis)." AR 613. The ALJ gave this opinion "some weight," as it was inconsistent with Dr. Sanchez's own earlier examination findings,[10] Plaintiff's statement concerning her own activity, and other opinions in the record, including that of Dr. Glassheim. AR 22.

### 2. *Plaintiff's Mental RFC*

The ALJ reviewed Plaintiff's testimony about her mental impairments. AR 18-23. Plaintiff testified that her anxiety and depression, along with the physical pain she was experiencing, prevented her from working. AR 18, 38. She testified that her depression disturbed

---

[10] For example, in February 2016, Dr. Sanchez found Plaintiff to be a "well-developed, well-nourished, pleasant female" with a normal gait and a normal range of motion in her shoulders, elbows, wrists, hips, cervical spine, knees, and ankles. AR 22, 445. He recommended she address her fibromyalgia with appropriate exercise, diet, and sleep. AR 22, 441. In September 2016, he recorded normal musculoskeletal findings, as well as normal findings for her back and extremities, aside from tender wrists. AR 586.

her sleep, led to suicidal thoughts, caused spells of loneliness and crying, and made it difficult to focus or get along with others. AR 18, 41, 50.

The ALJ also reviewed the other evidence in the record concerning Plaintiff's psychological limitations and found Plaintiff's subjective complaints were not "generally consistent with the evidence." AR 23. As a general matter, the ALJ observed that Plaintiff received limited mental health treatment. AR 21. The ALJ reviewed medical records from 2014, which showed that although she was diagnosed with depressive disorder and prescribed medication, she nevertheless had "appropriate mood and affect." AR 18-19, 420, 422-23. The ALJ further reviewed records from 2015 that found Plaintiff with a "depressed mood" and "dysthymic affect" and reporting no improvement in her depression; however, after an adjustment to her medication, Plaintiff reported about two months later that her mood had improved. AR 18-19, 21, 409, 413, 416.

The ALJ reviewed and assigned "some weight" to the opinion of Amy DeBernardi, Psy.D., who performed a consultative psychological examination of Plaintiff in April 2016. AR 20-22, 568-71. Dr. DeBernardi considered Plaintiff's statements that she had suffered from depression for about six years and anxiety for about four years and that she was not currently receiving mental health treatment. AR 568. Dr. DeBernardi diagnosed her with persistent depressive disorder and unspecified anxiety disorder. AR 571. At the end of the mental evaluation report, Dr. DeBernardi wrote a "functional assessment" that stated the following:

> [Plaintiff] appears to have a clear ability to reason and understand. Remote and recent memories are generally intact. Immediate memory is fair. Sustained concentration and persistence are also fair. She described family support. Adaptive skills and ability to tolerate stress are relatively limited.
>
> [Plaintiff] currently presents with some depressive symptoms. This might impact her ability to be a dependable employee. She also presents with symptoms of anxiety. This might impact her ability to tolerate changes in the work environment.

*Id.*; *see also* AR 22 (ALJ explaining that this assessment's examination findings also support its opinion that Plaintiff's condition "might" impact her dependability or her adjustment to changes).

The ALJ also reviewed the opinions of three state agency consultants. AR 21. One consultant opined in January 2015 that Plaintiff had no severe mental impairments. *Id.* The ALJ gave this opinion "little weight," as Plaintiff's symptoms subsequently increased in severity. *Id.* The other two consultants opined in April and July 2016 that Plaintiff could exercise reasonable judgment, carry out simple instructions, complete a workday without significant interruptions, and appropriately interact with others on a "superficial basis." AR 21, 111, 131. The ALJ found these opinions to be consistent with the evidence and gave them "great weight." AR 21.

In her RFC assessment, the ALJ referenced the opinions of these latter two state agency consultants and Dr. DeBernardi in explaining her RFC findings regarding Plaintiff's mental capacities:

> "[The] limitations . . . opined by [the two state agency consultant] are consistent with the evidence as a whole. . . . In April 2016, [Dr. DeBernardi] noted [Plaintiff] appeared to have a clear ability to reason and understand, generally intact remote and recent memory, fair immediate memory, fair sustained concentration and persistent, and relatively limited adaptive skills and ability to tolerate stress. Considering the [Plaintiff's] subjective complaints that she had difficulty focusing, along with this objective evidence, a mental residual functional capacity [with the limitations quoted above] is appropriate.

*Id.*

## C. Steps Four and Five

At step four, given the RFC described above, the ALJ found that Plaintiff was unable to perform her past relevant work as a caregiver or cashier. AR 24. At step five, however, the ALJ found that Plaintiff was able to successfully adjust "to other work that exists in significant numbers in the national economy," e.g., flat worker, warehouse checker, or merchandise marker. AR 25.

Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since February 2, 2016, the date the application was filed." *Id.*

## V.  ANALYSIS

### A.  ALJ Did Not Err in Analyzing Plaintiff's Fibromyalgia

Plaintiff asserts that the ALJ failed to "evaluate properly the severe impairment of fibromyalgia." Pl. Mot. 5.  Plaintiff recounts that the ALJ found fibromyalgia to be a severe impairment at step two, that Plaintiff testified that her pain and anxiety caused her to stop working, and that a rheumatologist diagnosed her in February 2016 with fibromyalgia after considering her reported symptoms.  Pl.'s Mot. 5-6; *see also* Pl.'s Rply 1-2.  Plaintiff, however, does not explain how the ALJ supposedly erred in analyzing this impairment.  Pl.'s Mot. 5-6; *see also* Pl.'s Rply 1-2.  Plaintiff does not, for example, cite to a legal standard that would have required the ALJ to consider or explain this impairment any differently in her RFC assessment, or at any other step in her analysis.  Pl.'s Mot. 5-6; *see also* Pl.'s Rply 1-2.

The ALJ thoroughly considered Plaintiff's fibromyalgia, finding it met the requirements of the SSA for classification as a "medically determinable impairment" and finding it to be a "severe impairment" at step two.  AR 14, 17.  The ALJ also specifically considered whether it met the listing requirements at step three and found it did not meet these criteria.  AR 17.  Finally, in her RFC assessment, the ALJ also thoroughly considered Plaintiff's fibromyalgia.  AR 18-23.  The ALJ, for example, discussed several physicians' treatment of this impairment, Plaintiff's statements regarding this impairment, the opinions of three state agency physicians who reviewed this impairment, and the opinions of Drs. Glassheim and Sanchez regarding this impairment.  AR 18-20.  And aside from Dr. Sanchez's relatively unexplained and extreme opinion, the ALJ imposed an even greater restriction than was recommended either by the state agency physicians

or Dr. Glassheim when she limited Plaintiff to only "light work"—primarily because of her fibromyalgia (in addition to her carpal tunnel syndrome). AR 20, 23. Thus, this Court finds that the ALJ did not err in her analysis of Plaintiff's fibromyalgia, or the evidence and opinions associated with this impairment.

Finally, Plaintiff does not argue that in light of her fibromyalgia (or the evidence and opinions supporting this impairment) the ALJ's RFC finding of "light work" cannot be supported by substantial evidence. Pl.'s Mot. 5-6; *see also* Pl.'s Rply 1-2. But to the extent Plaintiff intends to implicitly advance such an argument, this Court concludes, as further discussed below, that the ALJ's RFC finding of "light work" is supported by substantial evidence.

**B. ALJ Did Not Err in Weighing the Opinions of Drs. Glassheim or DeBernardi**

Plaintiff asserts that the ALJ did not properly evaluate the opinion evidence, focusing primarily on the opinions of Drs. Glassheim and DeBernardi. Pl.'s Mot. 5-11.

*1. Dr. Glassheim*

In discussing Dr. Glassheim's opinion, Plaintiff makes two discernible arguments. First, although she does not state this explicitly, Plaintiff intimates that the ALJ gave Dr. Glassheim's opinion too much weight when he chose to assign it "some weight." Pl.'s Mot. 6-9. Second, Plaintiff then more broadly implies that the ALJ's RFC finding of "light work" is not supported by substantial evidence. *Id.* at 9-10.

As a threshold matter, this Court cannot reweigh the evidence. *Langley*, 373 F.3d at 1118. This Court therefore cannot grant Plaintiff's implicit request to simply reweigh Dr. Glassheim's opinion.[11] Instead, as explained, this Court reviews only (1) whether the ALJ applied the correct

---

[11] Plaintiff also implies that the ALJ provided an inadequate explanation for why she gave Dr. Glassheim's opinion "some weight." Pl.'s Rply. 3; *see also* Pl.'s Mot 9. The ALJ, however, did explain why she gave his opinion "some weight"—namely because it was "supported by his examination findings," which the ALJ discussed, and because it was consistent with "[Plaintiff] and her mother's reports of [Plaintiff's] daily activities." AR 21. This Court therefore

legal standards and (2) whether the ALJ's factual findings are supported by substantial evidence. *Lax*, 489 F.3d at 1084.

This Court moves then to Plaintiff's broader argument that the ALJ's physical RFC finding of "light work" is not supported by substantial evidence. Pl.'s Mot. 6-10. Plaintiff asserts that either a "mere scintilla of evidence" only supports such a finding or that "other evidence" simply overwhelms such a finding. *Id.* at 9-10 (quoting *Langley*, 373 F.3d at 1118). For the following reasons, this Court disagrees.

First, this Court concludes that the ALJ's finding that Plaintiff had a physical RFC for "light work" is based on much more than a "mere scintilla of evidence." As mentioned above, in 2016 Plaintiff's rheumatologist, orthopedist, and podiatrist did not find evidence of any disabling conditions and recommended conservative treatments for her fibromyalgia, carpal tunnel syndrome, and plantar fasciitis. AR 19, 455, 489-91, 515-16, 605-06. Furthermore, three state agency physicians opined that Plaintiff had at least the capacity to perform "medium work"—to the extent they found her to have any severe physical limitations at all. AR 20-21, 91-92, 107-09, 126-29. In addition, Dr. Glassheim also found no significant limitations. AR 20-21, 372-78. The ALJ found Dr. Glassheim's opinion to be supported by both his examination findings and by outside reports of Plaintiff being "physically quite active." AR 19-21, 234-35, 237, 285-89, 295-302, 515 (Plaintiff and her mother's reports of her taking care of four children, doing laundry, cleaning, cooking, shopping, attending church, visiting family, using public transportation, driving, and generally being "very active around her house taking care of the house and her

<hr />

finds that the ALJ was not required to provide an even greater explanation for the weight she gave to his opinion. *See generally* 20 C.F.R. § 416.927 (discussing the evaluation of opinion evidence).

children").[12]  Furthermore, the ALJ—in accounting for Plaintiff's statements about her chronic pain—seemed to give Plaintiff the benefit of the doubt and found *even greater physical* limitations (by limiting Plaintiff to "light work") than had any of the three state agency physicians or Dr. Glassheim (who found either no limitations or only "medium work" limitations).  AR 20-21.  Thus, this Court rejects the argument that the evidence required the ALJ to find *even further*, i.e., disabling, limitations—particularly when essentially none of the medical evidence or opinions pointed to such a conclusion, aside from the sweeping and conclusory opinion of Dr. Sanchez.[13]

Second, in presenting "other evidence" to challenge the ALJ's finding, Plaintiff essentially refers to her diagnosis of fibromyalgia, her testimony about her physical limitations, and her mother's two written statements about her physical limitations.  Pl.'s M. 5-8.  This Court, however, does not find this "other evidence" to overwhelm the ALJ's finding.  Taking all the evidence into account, a reasonable mind could still easily accept as adequate the evidence that the ALJ used to support the physical RFC finding of "light work."

In sum, this Court concludes that the ALJ's finding of a physical RFC of "light work" is supported by substantial evidence, including the medical evidence from three specialists, Dr. Glassheim's opinion, the opinions of the three state agency physicians, and the statements of Plaintiff and her mother.

---

[12] Plaintiff cites to two 10th Circuit cases, which note that "sporadic performance [of household tasks or work] does not establish that a person" is not disabled.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987)); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (observing claimant's testimony that she could "work two to six hours per day as caretaker for her mother" did not establish no disability existed).  In the instant case, however, the ALJ did not rely solely on Plaintiff's household activities to conclude she was not disabled.  AR 17-23.  Instead, the ALJ analyzed Plaintiff's activity as one of many factors that supported her findings, which were also supported by the medical and opinion evidence from seven doctors.  AR 18-23.

[13] Plaintiff, perhaps understandably, does not refer to or rely on the altogether unsupported opinion of Dr. Sanchez that she was disabled, an opinion that was nonetheless given "some weight" by the ALJ.  Pl.'s M. 5-10; AR 22, 613.  Incorporating this opinion into the Court's analysis, however, does not change the Court's conclusion that the ALJ's physical RFC findings were supported by substantial evidence.

*2. Dr. DeBernardi*

Plaintiff argues that the ALJ did not adopt a portion of Dr. DeBernardi's opinion in her RFC assessment and then erred by failing to explain why. Pl.'s Mot. 10-11. In support of her argument, Plaintiff cites to a Social Security Ruling, which describes what an RFC assessment must include:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).
>
> . . . .
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR, 96-8p, 61 Fed. Reg. at 34478. In light of this standard, Plaintiff draws the Court's attention to Dr. DeBernardi's statement that Plaintiff's depressive symptoms "*might* impact her ability to be a dependable employee." AR 571 (emphasis added); Pl.'s M. 10. Plaintiff then claims that the ALJ erred by not including any of Dr. DeBernardi's limitations regarding "dependability" in her RFC assessment and then failing to explain why such limitations were omitted. *Id.* at 10.

This Court finds no error in the ALJ's evaluation of Dr. DeBernardi's opinion. First, Dr. DeBernardi's opinion regarding Plaintiff's dependability is not a "true medical opinion" that would have required the ALJ to either include it in her RFC assessment or, alternatively, explain why it was not adopted. In *Cowan v. Astrue*, 552 F.3d 1182 (10th Cir. 2008), the 10th Circuit held that a physician's unclear and somewhat ambiguous statement on whether a claimant could return to work "was not a true medical opinion" because "[i]t did not contain [the physician's] judgment about the nature and severity of [claimant's] physical limitations, or any information about what activities [claimant] could still perform." *Id.* at 1189. Similarly, in the case at hand, Dr.

DeBernardi's statement that Plaintiff's depressive symptoms "might" impact her dependability not only creates uncertainty as to *whether* her dependability would indeed be impacted, it also says nothing about *how* those depressive symptoms could impact her dependability. In other words, the statement says nothing about "the nature and severity" of Plaintiff's limitations, including what activities she could still perform.

Second, even assuming *arguendo* that Dr. DeBernardi's opinion was a "true medical opinion," this Court finds that the ALJ's RFC assessment nevertheless did not conflict with such an opinion. In her RFC assessment, the ALJ explicitly discussed Dr. DeBernardi's opinion and her examination findings several times, giving Dr. DeBernardi's opinion "some weight." AR 20-22. Furthermore, the ALJ explicitly listed all of Dr. DeBernardi's "functional assessment" medical findings and included them as "objective evidence" that supported her mental RFC findings. AR 21, 571. In addition, the ALJ's ultimate mental RFC finding limited Plaintiff to "simple, routine and repetitive work . . . making simple work related decisions in a workplace with few changes . . . occasional interaction with [others] . . . [and] performing work at reasoning level one or two." AR 17. These substantial mental RFC limitations do not conflict with an employee who "might" have an unspecified impact on her dependability, but rather appear to favor such an individual. Therefore, even assuming Dr. DeBernardi's statement were, for example, interpreted to say Plaintiff *is* less "dependable" at work (albeit in some nebulous and unspecified way), such an "opinion" would still not conflict with the ALJ's mental RFC assessment.

In sum, this Court concludes that Dr. DeBernardi's dependability statement is not a "true medical opinion." Furthermore, to the extent one considers such a statement to be a "true medical opinion," the ALJ's RFC assessment nevertheless would still not conflict with it. Therefore, the

ALJ was not required to explain why Dr. DeBernardi's unclear dependability statement was somehow not adopted.

### C.  ALJ Did Not Err in Discounting Plaintiff's Testimony

Finally, Plaintiff asserts that the ALJ did not "properly evaluate" her own testimony about her symptoms. Pl.'s M. 5, 11-12.  She implies that the ALJ inappropriately disregarded her testimony. *Id.* at 11.  In doing so, Plaintiff recounts her testimony at the hearing about her physical pain and how it limits her physical abilities, as well how her depression and anxiety limit her abilities. Pl.'s M. 12.  She also asserts that the ALJ erred by failing to discuss her testimony and then again claims that a "mere scintilla of evidence" supports the ALJ's RFC finding of "light work."  This Court, however, concludes that the ALJ appropriately considered and discussed Plaintiff's testimony and that the ALJ's RFC findings are supported by substantial evidence.

The regulations require the ALJ to "consider all of the evidence."  20 C.F.R. § 416.929(a). They also state that a claimant's "statements about [his or her] pain or other symptoms will not alone establish" a disability, and they also clarify that a claimant's testimony cannot be rejected "solely because the available objective medical evidence does not substantiate [his or her] statements." 20 C.F.R. § 416.929(a), (c)(2); *see also* SSR 16-3p, 81 Fed. Reg. 14166, 14169 (Mar. 16, 2016)  (a claimant's statement regarding his or her limitations cannot be disregarded solely because objective medical evidence does not substantiate it).  These regulations, however, do not require the ALJ to believe, adopt, or assign a particular weight to a claimant's statements or testimony.  *See* 20 C.F.R. § 416.929.  They do, however, prevent an ALJ from summarily rejecting or disregarding a Plaintiff's testimony *solely* because it is not supported by "objective medical evidence."  20 C.F.R. § 416.929(c)(2).

Here, the ALJ not only considered Plaintiff's testimony at the hearing, asking her many questions about her pain, depression, and anxiety, and their potential limiting affects [*see* AR 36-69], the ALJ also considered and discussed Plaintiff's testimony in her decision. *See, e.g.,* AR 18 (ALJ summarizing Plaintiff's testimony about her symptoms and their limiting affects); AR 20-21 (ALJ explaining that Plaintiff's "complaints of chronic entire body" pain and "subjective complaints that she had difficulty focusing" supported the ALJ's physical and mental RFC findings). Furthermore, the ALJ also discussed—and even incorporated—Plaintiff's testimony in her decision. AR 18, 20-21, 23, 36-69. Although the ALJ ultimately found that "[t]he medical evidence as a whole does not support [Plaintiff's] statements," she thoroughly explained why the evidence pointed to a conclusion different from what Plaintiff was suggesting. AR 14-23. For example, she explained how "other evidence" that was not "objective medical evidence"— including medical opinions and statements from Plaintiff and her mother—supported her findings. SSR 16-3p, 81 Fed. Reg. at 14169 (discussing the consideration of "other evidence," including medical opinions and statement from non-medical sources); AR 19-23. Thus, the ALJ did not reject or disregard Plaintiff's statements solely because the objective medical evidence did not support them.

Finally, as discussed in Section V(b)(1) above, the ALJ's physical RFC findings are supported by substantial evidence. Furthermore, aside from arguing about the inclusion of Dr. Bernardi's dependability statement, Plaintiff offers no argument for why the ALJ's mental RFC findings would not be supported by substantial evidence. Pl's M. 10-12. This Court further concludes that the ALJ's mental RFC findings are also supported by substantial evidence, including the opinions of two state agency consultants and Dr. DeBernardi.

## VI. CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that her findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***